**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**MIYORI MOORE**                                                      **PLAINTIFF**

**v.**                                                 **CIVIL ACTION NO.** 1:25cv301 TBM-RPM

**CHANDLER RESIDENTIAL, INC.**                              **DEFENDANT**

**COMPLAINT
JURY TRIAL DEMANDED**

**COMES NOW** the Plaintiff, Miyori Moore, by and through counsel, Watson & Norris, PLLC, brings this action to recover damages of violations of her rights pursuant to Title VII of the Civil Rights Act of 1964 for pregnancy discrimination, and Title VII of the Civil Rights Act of 1964 for sex discrimination against the Defendant, Chandler Residential, Inc.  In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

**THE PARTIES**

1.      Plaintiff, Miyori Moore, is a female resident of Harrison County, Mississippi.

2.      Defendant, Chandler Residential, Inc., can be served with process by serving its registered agent, Corporation Service Company, 109 Executive Drive, Suite 3, Madison, Mississippi 39110.

**JURISDICTION AND VENUE**

3.      This Court has federal question jurisdiction pursuant to Title VII of the Civil Rights Act of 1964.

4.      This Court also has personal and subject matter jurisdiction over the Defendant and venue is proper in this court.

5.      Plaintiff timely filed a Charge of Discrimination with the EEOC on December

1

11, 2024, a true and correct copy of is attached as Exhibit "A." The EEOC issued a Dismissal and Notice of Right to Sue on July 14, 2025, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this cause of action within ninety (90) days of receipt of her Dismissal and Notice of Right to Sue.

## STATEMENT OF FACTS

6.  Plaintiff is a 35-year-old female resident of Harrison, Mississippi.

7.  Plaintiff was hired on July 14, 2023, as a Renovation Technician at Chandler Residential, Inc. (CR).

8.  During the first six months of her employment, Plaintiff was moved around between several of CR's properties to perform renovations at those properties.

9.  Plaintiff performed her job so well that she was asked to assist with training other employees.

10.  By November 2023, although most of the renovations were completed, Plaintiff was asked to remain with CR because of her strong performance.

11.  At that time, she was switched to the role of Maintenance Technician.

12.  On or around April 15, 2024, Plaintiff became Heating, Ventilation, and Air Conditioning (HVAC) certified.

13.  During August 2024, Plaintiff discovered she was pregnant.

14.  Plaintiff immediately notified her employer that she was pregnant.

15.  On September 5, 2024, OBGYN Dr. John Pappas at the Memorial Woman's Clinic in Gulfport, sent documentation to CR stating the following: "Miyori Moore is under the care of Woman's Clinic for pregnancy. Please restrict her from lifting anything over 15 pounds and any large objects…".

2

16.    On or around September 20, 2024, Plaintiff was instructed to begin training Jay LNU (male) to fill in for her while she was out on maternity leave.

17.    During early October 2024, Plaintiff informed CR management that she was scheduled to undergo surgery on November 1, 2024, related to her pregnancy.

18.    Plaintiff informed management that she would be out of work for approximately a week for the surgery and recovery.

19.    On October 11, 2024, Property Manager Patience Sherman informed Plaintiff that she was terminated, allegedly because they could not allow her to take the leave needed to undergo surgery.

20.    Plaintiff contends that the surgery was related to her pregnancy and therefore this termination constituted pregnancy discrimination.

21.    After she was terminated, Plaintiff learned that her position was replaced by the male employee, Jay, whom she trained.

22.    Plaintiff contends that the week of leave she needed would not have been an undue hardship for CR, particularly because she had already been training Mr. Jay, with the intention that he would fill in for her while she was out on maternity leave.

23.    On December 11, 2024, Plaintiff filed an EEOC Charge of pregnancy discrimination and sex discrimination against CR.

24.    During or around mid-2025, CR submitted a Position Statement to the EEOC.

25.    CR's Position Statement alleges that, "Chandler maintains that Plaintiff's termination was based solely on her failure to meet performance standards and repeated violations of company policies, as documented in her Evaluation and Personal

Improvement Plan (PIP)."

26.    Plaintiff contends this allegation is false.

27.    Plaintiff denies that she failed to meet performance standards and/or had repeated violations of company policies, as alleged.

28.    Plaintiff contends that both the annual evaluation and the Performance Improvement Plan she received were issued by the then Property Manager Bridgette Forbes, not Patience Sherman.

29.    Notably, in July 2024, Ms. Sherman was still the Assistant Property Manager and Ms. Forbes was the Property Manager.

30.    Plaintiff contends that Ms. Forbes' annual evaluation did not show the degree of discrepancy between her (Plaintiff's) self-rating and that of the supervisor (Ms. Forbes) as the one that CR evidently gave to the EEOC that is signed by Ms. Sherman.

31.    Similarly, Plaintiff contends the wording of the PIP she received from Ms. Forbes was different than the one CR gave the EEOC as well.

32.    Plaintiff contends that after CR learned she was pregnant, they went back and altered the documentation to appear as though her performance was more severely deficient than it was.

33.    As a further example, Plaintiff denies that she was ever shown the verbal disciplinary action that was allegedly issued on August 23, 2024, and signed by Ms. Sherman on August 28, 2024.

34.    Not surprisingly therefore, there are no comments and no signature by Plaintiff on that form.

35.    Plaintiff concedes she did sign the written disciplinary action issued on

September 17, 2024, and signed by both herself and Ms. Sherman on September 19, 2024.

36.     Plaintiff notes, however, that it is evident from reading the details of that disciplinary action that Plaintiff was struggling with her pregnancy, e.g., becoming easily nauseated around certain odors, struggling with morning sickness, and other pregnancy-related complications.

37.     Other than the toothache mentioned, all the other absences listed were due to pregnancy-related issues.

38.     CR's Position Statement alleges that, "Plaintiff was hired on July 14, 2023, as a Maintenance Technician. Her job duties included but were not limited to:

- Turning over/Renovating apartments.
- Conducting routine maintenance on property.
- Responding to tenant repair requests.
- Lifting and handling equipment and materials weighing up to 100 pounds.
- Cleaning the grounds."

39.     Plaintiff contends this allegation is not completely accurate.

40.     Plaintiff was hired on July 14, 2023, as a Renovation Technician.

41.     During the first six months of her employment, Plaintiff was moved around between several of CR's properties to perform renovations at those properties.

42.     Plaintiff performed her job so well that she was asked to assist with training other employees.

43.     By November 2023, although most of the renovations were completed, Plaintiff was asked to remain with CR because of her strong performance.

44. At that time, she was switched to the role of Maintenance Technician.

45. In her work as a maintenance technician, Plaintiff performed all the duties listed in the allegation.

46. To expand her skillset as a maintenance technician, on or around April 15, 2024, Plaintiff became Heating, Ventilation, and Air Conditioning (HVAC) certified.

47. Overall, Plaintiff performed very well and both CR personnel and the tenants appreciated her.

48. Then, during August 2024, Plaintiff discovered she was pregnant.

49. Plaintiff immediately notified her employer that she was pregnant.

50. On September 5, 2024, OBGYN Dr. John Pappas at the Memorial Woman's Clinic in Gulfport, sent documentation to CR stating the following: "Miyori Moore is under the care of Woman's Clinic for pregnancy. Please restrict her from lifting anything over 15 pounds and any large objects…".

51. This marked the first time there were any limitations placed on Plaintiff's ability to perform her duties.

52. CR's Position Statement alleges that, "On August 6, 2024, Plaintiff's annual evaluation revealed significant performance deficiencies, including:

- Failure to complete assigned tasks in a timely manner.

- Lack of attention to detail in repair work.

- Poor attendance and punctuality.

- Need for additional training in HVAC.

Based on these deficiencies, Plaintiff was placed on a PIP to address these issues. The PIP, which Plaintiff signed, outlined clear expectations for improvement, including:

- Completing tasks with accuracy and within deadlines.

- Maintaining professional conduct and communication."

53.    Plaintiff contends this allegation mischaracterizes the events that occurred.

54.    Plaintiff consistently performed and completed maintenance tasks and repairs in a timely fashion and made sure to attend to all necessary details.

55.    Even after she was terminated, her co-worker, Mr. Diego, often reached out to her for direction on how to handle various repairs.

56.    Plaintiff consistently submitted documentation verifying completion of the tasks only after they were completed.

57.    Plaintiff denies that her attendance and punctuality were ever an issue prior to her pregnancy, during which she struggled with morning sickness and episodic bouts of nausea.

58.    Plaintiff further denies that she ever displayed conduct and communication that was not fully professional during her time with CR.

59.    CR's Position Statement alleges that, "Although Plaintiff showed some initial improvement, her performance and behavior deteriorated in subsequent weeks. She frequently called out of work, arrived late, and left early. Additionally, she became increasingly antagonistic towards management and coworkers. These behaviors disrupted operations and strained team dynamics."

60.    Plaintiff contends this allegation is false.

61.    As already stated, most of her times arriving to work late or leaving early were due to pregnancy-related complications, most notably due to morning sickness and bouts of nausea.

7

62.     Plaintiff adamantly denies she was ever "antagonistic" or "disruptive" toward anyone at work.

63.     These allegations are false and are a pretext for discrimination against her due to her pregnancy.

64.     CR's Position Statement alleges that, "Plaintiff alleges that she was terminated because of her pregnancy and her request for leave related to a pregnancy-related surgery. CR categorically denies this allegation. Chandler promptly accommodated Plaintiff's pregnancy-related lifting restrictions as recommended by her OBGYN. This demonstrates CR's commitment to supporting pregnant employees. Management followed up continually with Plaintiff to ensure that she was adhering to protocols to keep her and her unborn child safe (i.e.: Using masks and gloves when working with chemicals, not lifting anything outside of her restrictions). Plaintiff's termination was based solely on her documented performance deficiencies and her failure to adhere to the terms of her PIP. These issues predated her pregnancy and were unrelated to her medical condition."

65.     Plaintiff contends this allegation is false and misleading.

66.     Plaintiff denies that any significant effort was made by CR management to ensure that she was adhering to her medical restrictions.

67.     Rather, as long as the work got done, management showed little to no interest in Plaintiff's restrictions.

68.     On or around September 20, 2024, Plaintiff was instructed to begin training Jay LNU (male) to fill in for her while she was out on maternity leave.

69.     Notably, this occurred only days after Plaintiff was issued the written

disciplinary action.

70.     Plaintiff is suspicious that at that point, CR began to make plans to terminate her because of her pregnancy.

71.     During early October 2024, Plaintiff informed CR management that she was scheduled to undergo surgery on November 1, 2024, related to her pregnancy.

72.     She informed management that she would be out of work for approximately a week for the surgery and recovery.

73.     Since Mr. Jay had recently been hired and trained by Plaintiff, it would have been easy for CR to allow him to fill in for Plaintiff while she was out.

74.     Nevertheless, CR terminated Plaintiff on October 11, 2024.

75.     Tellingly, at that time, Property Manager Patience Sherman did not claim that the termination was due to job performance deficiencies.

76.     Rather, Ms. Sherman alleged that Plaintiff was terminated because CR could not allow Plaintiff to take the leave needed to undergo surgery, i.e., a surgery that was pregnancy related.

77.     CR's Position Statement alleges that, "Plaintiff contends that her termination and replacement by a male employee constituted sex discrimination. Chandler denies this claim. Plaintiff was not replaced. Chandler hired a temporary employee and began training him as part of a routine succession planning and to ensure operational continuity during Plaintiff's anticipated maternity leave. Chandler's workforce is diverse and includes both male and female employees in various roles. Employment decisions are based on merit and performance, not gender."

78.     Plaintiff contends this allegation is false.

9

79.     Although Mr. Jay may have been hired initially under the guise of him being a temporary employee, after Plaintiff was terminated, Mr. Jay was hired full-time.

80.     Plaintiff is suspicious that CR quietly began planning to terminate her as soon as it learned about her pregnancy.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF TITLE VII - PREGNANCY DISCRIMINATION

81.     Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 80 above as if fully incorporated herein.

82.     Plaintiff has been discriminated against in the terms and conditions of her employment on the basis of her sex, female, and pregnancy.  Plaintiff is a member of a protected class, female, and she was pregnant.  Defendant also failed to reasonably accommodate Plaintiff's pregnancy.

83.     Plaintiff has been harmed as a result of the Defendant's discrimination, and the Defendant is liable to the Plaintiff for the same.

84.     The acts of the Defendant constitute a willful intentional violation of Title VII of the Civil Rights Act of 1964, as amended, and entitle Plaintiff to recovery of damages, both compensatory and punitive in nature.

### COUNT II: VIOLATION OF TITLE VII - SEX DISCRIMINATION

85.     Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 84 above as if fully incorporated herein.

86.     Defendant discriminated against Plaintiff because of her sex, female, based on the facts identified above which constitutes violation of Title VII of the Civil Rights Act of 1964.

87.    Defendant was motivated to discriminate against Plaintiff because she is female.

88.    Plaintiff has suffered lost wages, benefits because of her termination and other pecuniary losses as well as deep humiliation, anxiety and emotional distress.

89.    The unlawful actions of Defendants complaint of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff giving rise to to both compensatory and punitive damages under Title VII.

## **PRAYER FOR RELIEF**

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1.    Back wages;
2.    Reinstatement or future wages in lieu of reinstatement;
3.    Compensatory damages;
4.    Punitive damages;
5.    Attorney's fees;
6.    Lost benefits;
7.    Pre-judgment and post-judgment interest;
8.    Costs and expenses; and
9.    Such further relief as is deemed just and proper.

THIS the 8th day of October 2025.

Respectfully submitted,

MIYORI MOORE, PLAINTIFF

By: /s/Nick Norris
Nick Norris (MB# 101574)
Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
Nick Norris

11

272 Calhoun Station Parkway, Suite C #13
Gluckstadt, MS 39110
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
Email: nick@watsonnorris.com